IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-986 (CJB) |
| | ) | |
| OUR BODY ELECTRIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-987 (CJB) |
| | ) | |
| PELOTON INTERACTIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| NEC CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-988 (CJB) |
| | ) | |
| TONE IT UP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S LETTER TO THE HONORABLE CHRISTOPHER J. BURKE REGARDING DISPUTE OVER PROPOSED <u>SUPPLEMENTAL PROTECTIVE ORDER</u>**

Dear Judge Burke:

Defendants Our Body Electric, Inc. ("OBE"), Peloton Interactive, Inc. ("Peloton"), and Tone It Up, Inc. ("Tone It Up") (collectively, "Defendants") respectfully submit this response to Plaintiff NEC Corporation's ("Plaintiff" or "NEC") Letter regarding the parties' disputes concerning the proposed supplemental protective order for source code. (D.I. 51.)

With its proposed provisions to the Supplemental Protective Order (the "SPO"), Plaintiff asks the Court to sacrifice the security of Defendants' source code in exchange for small gains in logistical convenience. Defendants' interest in protecting their most proprietary information outweighs Plaintiff's need for added convenience, particularly when, as here, the SPO already provides Plaintiff with greater access to Defendants' code than what is permitted under the Default Standard for Access to Source Code ("Default Standard"). Defendants respectfully submit that Plaintiff's desire for even greater flexibility is not a sufficient basis for granting its requests.

**Issue 1:** **A Receiving Party should be prohibited from using or possessing any recording device or memory device (e.g., USB memory stick, cameras or any camera-enabled device, CDs, floppy disks, portable hard drives, cellular telephones, smartphones, and/or other mobile devices, including tables, computers, etc.) while accessing the computer containing Source Code Material. (D.I. 52, App. A, ¶ 34(a))**

Plaintiff states that access to electronic devices (including mobile devices, tablets, and computers capable of connecting to the Internet) while inspecting Defendants' source code is necessary because it is harder to hand write notes than it is to type them electronically. This is not a valid basis for permitting electronic devices in the inspection room. Permitting electronic notetaking needlessly introduces risk to Defendants' code. *Inventor Holdings, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 13-96-GMS, 2014 WL 4370320, at *3 (D. Del. Aug. 27, 2014). The marginal added convenience, if any, of typing notes does not favor permitting Plaintiff's source code reviewers to use their electronic devices.

Furthermore, Plaintiff is not entitled to a relaxed notetaking protocol merely because other provisions in the SOP, individually or collectively, provide certain safeguards to Defendants. In fact, the need for several paragraphs of source code review protocol—much of which is agreed—demonstrates Plaintiff's acknowledgement of the seriousness of the security risk.

Plaintiff also misapprehends the protective orders it cites from other cases. Neither the Protective Order in *Peloton Interactive, Inc. v. Flywheel Sports, Inc.* or the original Protective Order in *iFit Inc. v. Peloton Interactive, Inc.* permitted notetaking of any kind (electronic, handwritten, or otherwise). D.I. 51 at Ex. C & D. Instead, both of those Protective Orders simply state that a party can request print-outs of source code following an inspection. In *iFit*, the parties later amended the Protective Order to allow the source code reviewer "to take handwritten notes relating to the source code." *See* C.A. No. 20-1386, D.I. 140 (attached as Ex. 1).

Even if both Protective Orders did expressly permit electronic notetaking (they do not), they are irrelevant to the relief Plaintiff seeks here. First, the accused technology in *iFit* was limited to a single feature ("auto follow") of a single just-released Peloton bike (*see, e.g.* C.A. 20-1386, D.I. 1 ¶¶ 37-38). Accordingly, any source code production in *iFit* was narrowly focused on the

The Honorable Christopher J. Burke                                                                                      Page 2
April 27, 2023

small amount of code enabling that feature. Here, Plaintiff accuses Defendants' "content streaming services, and systems and/or devices for use with the same" across Defendants' entire product lines of infringement, necessitating production of a far larger amount of relevant source code. Thus, the amount and type of accused source code at issue in *iFit* is simply not comparable to this case. Additionally, in *Flywheel Sports*, Peloton was the patent owner and the source code inspecting *plaintiff*.[1] Accordingly, Defendants' concessions allowing handwritten notes, as in *iFit*, are more than adequate to accommodate Plaintiff's inspection of code without any undue burden.

>**Issue 2:** **A Receiving Party may request no more than three (3) hard copy print-outs of Source Code Material. (D.I. 52, App. A, ¶ 34(h).)**

Plaintiff has failed to establish why Defendants' accommodation of providing three (3) hard copy print-outs is unworkable or insufficient. Simply put, Defendants' interest in limiting the number of physical copies of their highly sensitive source code strongly outweighs Plaintiff's interest in having looser restrictions that simply make it more convenient for Plaintiff to review source code. *See, e.g.*, *Via Vadis Controlling GmbH v. Skype, Inc.*, C.A. No. 12-193-RGA, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013) (acknowledging that "[s]ource codes are the most sensitive and confidential property of [parties]. When disclosed in U.S. litigation, extreme measures are ordered to protect their confidentiality.").

Because Defendants have already agreed to provide an inspection machine in any domestic office of its outside counsel, Plaintiff *and* its experts already have significant access to Defendants' code. D.I. 52 at App. A, ¶ 34(a). For example, Plaintiff and its experts can inspect Peloton's code at the following locations: Century City, California; Chicago, Illinois; Dallas, Texas; Houston, Texas; Los Angeles, California; New York, New York; Orange County, California; San Diego (and Del Mar), California; San Francisco, California; Menlo Park, California; Washington, D.C., and Wilmington, Delaware. In addition to three printed copies of code, Defendants have also agreed to allow Plaintiff to: (1) "make and use short electronic excerpts and images of source code if necessary for court filings, expert reports, contentions, discovery responses, trial exhibits, demonstrative exhibits and other similar documents (including drafts thereof),"[2] and (2) electronically transmit said documents if the transmission is encrypted. D.I. 52 at App. A, ¶¶ 34(k), 34(m). The agreed provisions of the SPO are already flexible enough to enable Plaintiff to do its work. This flexibility and built-in convenience weighs against permitting an unnecessary number of additional source code print-outs, *each of which can potentially include up to 600 pages* of Defendants' code. D.I. 52 at App. A, ¶ 34(h).

The Protective Orders Plaintiff cites in *iFit* and *Flywheel Sports* also do not support Plaintiff's position on this issue. *iFit* implies that only a single "print-out or copy" of the source code will be made, and then states that additional photocopies must be by "agreement of the Producing Party or order of the Court." D.I. 51, Ex. C, ¶ 8(j). Furthermore, the Protective Order in *Flywheel Sports* merely adopted language from that court's Sample Patent Protective Order

---

[1]   Flywheel Sports, Inc.'s stipulations regarding the inspection of its source code in an unrelated matter is not binding on Defendants.

[2]   These electronic documents containing short excerpts and/or images of code must at all times be password protected. D.I. 52 at App. A, ¶ 34(k).

The Honorable Christopher J. Burke												Page 3
April 27, 2023

indicating that a "reasonable number of printouts" may be made. *Compare* D.I. 51, Ex. D, ¶ 10(h) *with* https://www.txed.uscourts.gov/?q=judge/district-judge-robert-schroeder-iii at ¶ 10(h). Nothing in the record of either case suggests that a defendant ever produced five *separate* copies of its source code. Moreover, this Court's Default Standard permits *no* paper copies of source code absent agreement of the producing party or Court Order. Three paper copies of Defendants' source code is more than "reasonable" under the circumstances.

> **Issue 3:** A Receiving Party must secure the three (3) hard copy print-outs of Source Code Material in a secured locked area in the offices of the Receiving Party's Outside Counsel. (App. A, ¶ 34(j))

Consistent with its other arguments for additional logistical convenience, Plaintiff seeks to increase the number of potential storage locations for Defendants' highly sensitive source code. Plaintiff states that there "is no reason to believe that consultants or experts are incapable of keeping source code in a safe area as compared with offices of outside counsel." (D.I. 51 at 3.) This does not assuage Defendants' legitimate concerns about where their most confidential information may be kept. Plaintiff has failed to provide additional detail regarding the "different geographical locations," (*id.*), and Plaintiff has not sufficiently shown how its unidentified experts and consultants will be burdened (if at all) by travelling to Plaintiff's counsel's offices.

Essentially, at this juncture, Plaintiff's concerns are too abstract if not altogether unripe. For example, Plaintiff states that, to "require that experts and consultants travel to NEC's counsel's offices each and every time they need to review or study the print-outs would be both inefficient and burdensome." D.I. 51 at 3. But this presupposes that Plaintiff's experts do not have access to a source code review terminal, which could obviate the need to review or handle or store a source code print-out. Because "[t]he source code can be made available at multiple places of Plaintiff's choosing, and [three] print-outs can be kept at the office of Plaintiff's counsel[,]" the Court should deny Plaintiff's request and require Plaintiff to maintain Defendants' source code in a secured locked area of the offices of Plaintiff's outside counsel of record. *Infinite Data LLC v. Intel Corp.*, C.A. No. 14-391-RGA, D.I. 29 (D. Del. Aug. 8, 2014) (denying plaintiff's request to permit its expert to maintain copies of source code at the offices of the expert and ordering that printed copies of source code must be maintained at the offices of counsel of record).

As with the other two issues in dispute, the Stipulated Protective Orders in *iFit* and *Flywheel* similarly do not support the relief Plaintiff seeks. As described above, the technology at issue in *iFit* was much narrower than it is here. Additionally, the parties stipulated to the *iFit* protective order during the midst of the COVID-19 pandemic, when travel was extremely limited and many firms did not permit outside visitors to their offices. *See* D.I. 51 at Ex. C (indicating it was filed on November 2, 2020). And defendant Flywheel's decision to permit Peloton's experts to maintain Flywheel's source code at their offices has no bearing on whether Plaintiff's unidentified experts in this case should be able to maintain hard copy print-outs of all of Defendants' code in unidentified locations.

For the foregoing reasons, Defendants request that the Court adopt their positions for each of the disputed positions in the proposed Supplemental Protective Order for Source Code. (D.I. 52 at App. A, ¶¶ 34(a), (h), and (j).)

The Honorable Christopher J. Burke  Page 4
April 27, 2023

                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                */s/ Cameron P. Clark*

OF COUNSEL:

Steven G. Schortgen  
Jennifer Klein Ayers  
SHEPPARD MULLIN  
2200 Ross Avenue, 20th Floor  
Dallas, TX  75201  
(469) 391-7400

Karen Jacobs (#2881)  
Michael J. Flynn (#5333)  
Cameron P. Clark (#6647)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, DE  19899  
(302) 658-9200  
kjacobs@morrisnichols.com  
mflynn@morrisnichols.com  
cclark@morrisnichols.com

*Attorneys for Defendant*  
*Peloton Interactive, Inc.*

POTTER ANDERSON & CORROON, LLP

*/s/ Andrew L. Brown*

OF COUNSEL:

Gary Abelev  
Armin Ghiam  
HUNTON ANDREWS KURTH LLP  
200 Park Avenue, 52nd Floor  
New York, NY  10166  
(212) 309-1000

Michael A. Oakes  
Steven L. Wood  
HUNTON ANDREWS KURTH LLP  
2200 Pennsylvania Avenue NW  
Washington, DC  20037  
(202) 955-1500

David Ellis Moore (#3983)  
Bindu A. Palapura (#5370)  
Brandon R. Harper (#6418)  
Andrew L. Brown (#6766)  
1313 N. Market Street, Hercules Plaza, 6th Floor  
Wilmington, DE  19899-0951  
(302) 984-6000  
dmoore@potteranderson.com  
bpalapura@potteranderson.com  
bharper@potteranderson.com  
abrown@potteranderson.com

*Attorneys for Defendant*  
*Our Body Electric, Inc.*

The Honorable Christopher J. Burke  Page 5
April 27, 2023

                                      Young Conaway Stargatt & Taylor, LLP

                                      */s/ Pilar G. Kraman*

OF COUNSEL:

Erica J. Van Loon
Joshua J. Pollack
Nixon Peabody LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071
(213) 629-6000

                                      Pilar G. Kraman (#5199)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, DE 19801
                                      (302) 571-6600
                                      pkraman@ycst.com

                                      *Attorneys for Defendant*
                                      *Tone It Up, Inc.*

April 27, 2023